# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | |
|---|---|
| SHANNON RULE, ET AL. | CASE NO. 5:16-CV-01408 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| SOUTHERN INDUSTRIAL MECHANICAL MAINTENANCE CO., L.L.C., ET AL. | MAG. JUDGE KAREN L. HAYES |

## MEMORANDUM ORDER

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for leave to file second amended complaint [doc. # 122] filed by plaintiffs Shannon Rule and Karina Esquivel, et al. The motion is opposed. For reasons assigned below, the motion is granted-in-part and denied-in-part.[1]

## Background

On October 7, 2016, Shannon Rule and Karina Esquivel filed the instant collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, individually, and on behalf of all other similarly-situated current and former employees of Southern Industrial Mechanical Maintenance Company ("SIMMCO") for unpaid wages, overtime, liquidated damages, attorney's fees, and costs. (Compl., ¶ 1). Specifically, plaintiffs allege that they were hourly, non-exempt employees entitled to overtime pay under the FLSA, but that SIMMCO failed to include their per diem amounts in their regular pay when calculating and paying overtime. (Compl., ¶¶ 10-12). Plaintiffs contend that because SIMMCO's per diem policy was

---

[1] As this motion is not excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

tied to the amount of hours worked and subject to reduction on an hourly basis, the per diem must be included as a component of their regular rate of pay for purposes of overtime. *Id*. (citing *Newman v. Advanced Tech. Innovation Corp.*, 749 F.3d 33, 38 (1st Cir. 2014)).

On December 30, 2016, plaintiffs filed a motion to conditionally certify a collective action and to authorize notice to prospective parties. [doc. # 12]. On March 6, 2017, the undersigned recommended that the motion be granted, as revised. (March 6, 2017, R&R [doc. # 22]). On April 24, 2017, the District Court adopted the report and recommendation and conditionally certified the collective action. (April 24, 2017, Order [doc. # 45]).

On June 14, 2017, the court granted plaintiffs leave to amend their complaint to join SIMMCO's officers/owners, David Blurton and Ginger Blurton, as additional defendants. *See* doc. #s 73, 84-85. On February 12, 2018, SIMMCO filed in the record a suggestion of bankruptcy. [doc. # 108].

For almost one year, plaintiffs and the Blurtons did nothing to advance the case for trial until the District Court prompted them by convening a January 7, 2019, status conference. *See* doc. #s 109-110. At the conference, plaintiffs reaffirmed their interest in pursuing their claims against the Blurtons. Accordingly, on January 22, 2019, the undersigned held a scheduling conference and issued a new scheduling order. [doc. #s 112-114].

On February 19, 2019 – more one and one-half years after joining the Blurtons as defendants -- plaintiffs served each with their initial interrogatories and requests for production. (Interr. & Reqs. for Prod.; M/Compel, Exh. C). On March 21, 2019, the Blurtons responded to plaintiffs' discovery requests. (Defs. Resps. to Interr. & Reqs. for Prod.; M/Compel, Exh. D

On May 7, 2019, plaintiffs filed the instant motion for leave to amend their complaint to add the following defendants: (i) former SIMMCO Project Manager David Payne; (ii) former SIMMCO Human Resources Director Vanessa Carrasco; (iii) former SIMMCO Superintendent

Randy Sawdey; (iv) former SIMMCO Safety Director Tom Pegram; (v) "Southern Industrial Mechanical Maintenance Company II," or SIMMCO II, a successor company to SIMMCO; and (vi) The Blurton Group, L.L.C., a joint employer of plaintiffs.

On May 20, 2019, the Blurtons filed their opposition to plaintiffs' motion, in which they argued that the proposed amendment was untimely and futile. [doc. # 133]. Plaintiffs filed their reply brief on May 24, 2019. [doc. # 138]. Thus, the matter is ripe.

## Analysis

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend shall be "freely" granted "when justice so requires." Fed.R.Civ.P. 15(a)(2). However, where, as here, amendment is sought after expiration of a court's scheduling order deadline, Rule 15(a)'s liberal standard is inapplicable unless, and until the party seeking leave first satisfies the more demanding requirements of Rule 16(b). *See Fahim v. Marriott Hotel Services, Inc.*, 551 F.3d 344, 348 (5th Cir. 2008) (citation omitted).

**I. Rule 16**

Under Rule 16(b), "a schedule may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4). To obtain an extension of a scheduling deadline, the requesting party must demonstrate that, despite its diligence, it cannot reasonably meet the deadline. *Fahim, supra* (citations omitted). The four factors relevant to good cause include, (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* (citations and internal quotation marks omitted). The court considers each factor, in turn.

    a) <u>Explanation for Failure to Timely Seek Leave to Amend</u>

       *i) Individual Defendants*

3

Plaintiffs attribute the timing of this motion to the fact that they did not uncover requisite facts to support FLSA claims against the individual defendants until the Blurtons served them with their supplemental discovery responses on May 1, 2019. *See* M/Leave to Amend, Exh. D. The Blurtons contend that the individual defendants were disclosed as potential witnesses in this case as early as January 2017, in connection with SIMMCO's initial disclosures. Furthermore, on January 9, 2017, in its responses to plaintiffs' first set of discovery, SIMMCO identified Randy Sawdey, David Payne, and Tom Pegram as individuals who supervised plaintiffs. (Defs. Opp., Exh. 1). At that time, SIMMCO also identified Vanessa Carrasco as the person who entered the underlying data for calculating overtime. *Id*. However, SIMMCO limited its discovery responses to the two original plaintiffs, and expressly excluded persons who might later consent to participate in a collective action, if certified. *Id*. The Blurtons further argue that plaintiffs themselves should have known who their supervisors were from the suit's inception.

The court observes that under the FLSA, an "[e]mployer includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (internal quotation marks omitted). The Fifth Circuit uses the "economic reality" test to assess whether there is an employer/employee relationship. *Gray v. Powers*, 673 F.3d 352, 354–55 (5th Cir.2012) (citations omitted). In order to resolve whether an individual or entity is an employer, the court must consider whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id*. (citation omitted). In cases involving more than one potential employer, the court "must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test." *Id*. (citation omitted).

The court is not persuaded that the plaintiffs in this collective action would have had personal knowledge as to all of the foregoing factors for the prospective defendants. Moreover, the court accepts plaintiffs' explanation that they did not obtain additional information to support their claims against the individual information until the Blurtons supplemented their discovery responses on May 1. In fact, the Blurtons contend that plaintiffs *still* do not allege sufficient facts to assert plausible claims against the individual defendants. *See* discussion, *infra*.

Although not emphasized by plaintiffs, the need to join additional prospective employers beyond SIMMCO and the Blurtons did not crystallize until after SIMMCO filed for bankruptcy, and then earlier this year, when the Blurtons intimated that they did not have money or assets to satisfy a judgment against them. *See* Email Correspondence; M/Extend Disc. Deadlines, Exh. A. Regardless, plaintiffs promptly filed the instant motion within days after receipt of the supplemental discovery responses.

        ii)        *The Blurton Group*

The Blurtons argue that plaintiffs could have joined the Blurton Group within the original deadline to amend pleadings because SIMMCO's website consistently documented that SIMMCO was a division of the Blurton Group. Again, however, the need to join the Blurton Group did not crystalize until only a few months ago. *See* discussion, *supra*. Moreover, the court appreciates plaintiffs' decision to consolidate its joinder of parties into one motion, which did not ripen until after receipt of supplemental discovery responses regarding the individual defendants.

        iii)        *SIMMCO II*

Plaintiffs assert that SIMMCO II was not formed until October 1, 2018. *See* M/Leave to Amend, Exh. C. The Blurtons apparently contend that plaintiffs should have sought leave to amend to join SIMMCO II before now. Of course, neither side did anything in this case after

SIMMCO's bankruptcy filing until prompted by the District Court in January 2019.   In addition, plaintiffs did not want to file piecemeal amendments.   *See discussion, supra*.

The court finds that plaintiffs' rationale for this out-of-time amendment is reasonable.

b)   <u>Importance of the Amendment</u>

The Blurtons concede the importance of the amendment.   Indeed, following SIMMCO's bankruptcy and with judgments and liens exceeding $30 million already entered against the Blurtons, *see* doc. # 119-2, it is vital to plaintiffs to seek other potential sources of recovery.

c-d)   <u>Potential Prejudice and the Availability of a Continuance</u>

Defendants contend that amendment will protract these already lengthy proceedings. While undoubtedly correct, the Blurtons share responsibility with plaintiffs for not seeking to advance this case for almost one year after SIMMCO's bankruptcy filing.   Therefore, their complaint rings hollow.

The Blurtons also assert that amendment "will introduce new, disputed legal issues that will require [sic] fundamentally alter this case."   (Defs. Opp. Memo, pg. 12).   However, the court already is tasked with resolving whether individuals (the Blurtons) may be considered "employers" under the FLSA.   This same issue will be at play as to the new individual defendants.   Furthermore, discovery tied to SIMMCO II and the Blurton Group should not directly impact the Blurtons – at least in their individual capacities.

Finally, the court observes that a continuance of scheduling deadlines is an available (and likely necessary) option here.   Of course, a continuance is the very prejudice that the Blurtons seek to avoid.   However, as the court observed in an earlier ruling, if the Blurtons have a viable defense that does not turn upon additional discovery, then they remain at liberty to file a dispositive motion.

Upon consideration of the Rule 16(b) factors, the court concludes that plaintiffs have demonstrated good cause to support the out-of-time amendment of their complaint to join additional defendants. Accordingly, the court will proceed to consider whether amendment should be permitted under Rule 15.

## II. Rule 15

Under Rule 15, "Whether leave to amend should be granted is entrusted to the sound discretion of the district court . . ." *Quintanilla v. Texas Television, Inc.*, 139 F.3d 494, 499 (5th Cir.1998) (quoted source and internal quotation marks omitted). Yet, "[i]n the context of motions to amend pleadings, 'discretion' may be misleading, because Fed. R. Civ. P. 15(a) 'evinces a bias in favor of granting leave to amend.'" *Martin's Herend Imports v. Diamond & Gem Trading United States of America Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. Nov. 1981)). A district court must have a "substantial reason" to deny a request for leave to amend. *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (citation omitted).

In deciding whether to grant a party leave to amend, the court considers the following factors: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment. *Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Absent any of these factors, leave should be granted. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Foman*, 371 U.S. at 182).

The Blurtons argue that the proposed amendment should be denied, as futile.[2] In the Rule 15 context, an amendment is futile if it "would fail to state a claim for relief upon which relief could be granted." *Stripling v. Jordan Production Co.*, LLC, 234 F.3d 863, 873 (5th Cir. 2000). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). In addition, a proposed amendment is futile when the proposed "theory has been adequately presented in a prior version of the complaint." *Jamieson By and Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985) (emphasis added).

As set forth above, in cases involving more than one potential employer, the court must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part economic reality test. *Gray, supra*. However, "a party need not establish each element in every case." *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir.2014) (citation omitted). The dominant theme is to impose FLSA liability upon individuals who exercised "operating control" over employees. *Id*. (citation omitted). Moreover, to better serve the FLSA's remedial purpose, the term "employer" must be interpreted more broadly than in common law applications. *Id*. (citation omitted).

With this in mind, the court will address the plausibility of plaintiffs' claims against the prospective defendants.[3]

---

[2] Insofar as the Blurtons also contest the timing of the motion under Rule 15, the court finds that any delay was not undue for reasons expressed in the Rule 16 analysis.

[3] The court shares plaintiffs' concern that the Blurtons do not enjoy standing to prosecute a

### a) The Individual Defendants

Plaintiffs' proposed second amended complaint includes the following allegations against the individual defendants:

**David Payne** – was a former SIMMCO superintendent who "was responsible for, among other things, (i) setting up the procedures for tracking, recording and accounting for the amount of overtime and per diem pay that was paid to Plaintiff and the opt-in Plaintiffs at large job sites; (ii) setting the work hours of Plaintiffs and opt-in Plaintiffs; (iii) hiring Plaintiffs and opt-in Plaintiffs; and (iv) supervising and disciplining Plaintiffs and the opt-in Plaintiffs." (Prop. 2nd Amend. Compl., ¶ 18).

**Randy Sawdey** – was a former SIMMCO superintendent who "was responsible for, among other things, (i) setting the work hours of Plaintiffs and opt-in Plaintiffs; (ii) hiring Plaintiffs and opt-in Plaintiffs; and (iii) supervising and disciplining Plaintiffs and the opt-in Plaintiffs." *Id.*, ¶ 19.

**Tom Pegram** – was a former SIMMCO safety director, who "was responsible for, amonog [sic] other things, supervising and disciplining Plaintiffs and the opt-in Plaintiffs." *Id.*, ¶ 20.

**Vanessa Carrasco** – was a former SIMMCO human resources director, who "was responsible for, among other things, maintaining payroll, hours worked and other personnel records for Plaintiffs and the opt-in Plaintiffs." *Id.*, ¶ 21.

---

futility argument on behalf of unrelated defendants. However, considerations of expediency in this already old case favor pre-amendment review of the sufficiency of plaintiffs' allegations in an effort to avoid unnecessarily protracting this case's lethargic progress and to ameliorate the burden on prospective defendants against whom plaintiffs might not state a viable claim for relief.

Upon consideration, the court finds that plaintiffs allege sufficient facts to satisfy at least two factors of the economic realities test as to David Payne and Randy Sawdey, but no more than one factor as to Tom Pegram and Vanessa Carrasco. Case law suggests that plaintiffs must allege facts to support multiple economic realities factors to state a plausible claim for employer liability under the FLSA. *See e.g.*, *Dupre v. Westlawn Cemeteries*, No. 13-356, 2013 WL 3730125, at *3 (E.D. La. July 12, 2013); *see also Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 253 (5th Cir.2012) (sustaining summary judgment in favor of defendant where plaintiff only adduced evidence to support one economic realities factor). Accordingly, the court finds that plaintiffs allege plausible claims for relief under the FLSA only against David Payne and Randy Sawdey.

    b) <u>The Blurton Group</u>

Plaintiffs' proposed second amended complaint alleges that SIMMCO is a division of The Blurton Group, and that "The Blurton Group, SIMMCO, and SIMMCO II shared employees, owners, and supplies and were all operated by Individual Defendants Ginger Blurton and David Blurton." (Prop. 2nd Amend. Compl., ¶ 22).

Insofar as plaintiffs seek to impose liability against The Blurton Group under a "joint employer" theory, they must satisfy the economic realities test as to this entity. *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir.2012). However, plaintiffs do not allege facts to support any of the economic realities factors. Rather, they allege only that The Blurton Group shared employees, resources, and ownership. These allegations do not suffice.

To the extent that plaintiffs seek to impose liability against the Blurton Group via its apparent status as a parent company to SIMMCO, the court may consider the four factor analysis applied to labor disputes. *See Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir.1997) (citing *Radio Union v. Broadcast Serv.*, 380 U.S. 255, 257, 85 S.Ct. 876, 877 (1965). Those

considerations include: "(1) interrelation of operations, (2) centralized control of labor or employment decisions, (3) common management, and (4) common ownership or financial control." *Id*. (citation omitted). Ultimately, however, the inquiry "focuses on the question whether the parent corporation was a final decision-maker in connection with the employment matters underlying the litigation." *Id*. Furthermore, "the mere existence of common management and ownership are not sufficient to justify treating a parent corporation and its subsidiary as a single employer." *Lusk, supra*.

Here, plaintiffs allege that Ginger and David Blurton were directly involved in the daily operations, including employee and payroll operations of SIMMCO. (Prop. 2nd Amend. & Suppl. Compl., ¶¶ 17-18). They further allege that the Blurtons were directly involved in developing and implementing SIMMCO's per diem policy. *Id*. While common management and ownership do not suffice for joint liability, if the Blurtons also were acting on behalf of The Blurton Group when they performed their duties for SIMMCO, then this could tend to support a finding that the Blurton Group was a joint employer.

In short, relying upon judicial experience and common sense, the court finds that plaintiffs' proposed amended complaint states a plausible claim for relief against The Blurton Group, sufficient to afford defendant fair notice of the claim(s) against it, along with the reasonable *expectation* that discovery will reveal relevant evidence for each of the elements of the claim. *Twombly, supra*.

    c)    <u>SIMMCO II</u>

Plaintiffs make the following allegations against SIMMCO II:

24. Defendant SIMMCO II was formed in or around October 2018, while Defendant SIMMCO was in bankruptcy but still operating as an ongoing concern. Thus, there is a substantial continuity of operations between SIMMCO and SIMMCO II.

25. Upon information and belief, Individual Defendants Ginger Blurton and David Blurton (or both) are the owner or owners of SIMMCO II.

26. Upon information and belief, Defendant SIMMCO II has acquired assets from SIMMCO. According to Individual Defendants Ginger and David Blurton, SIMMCO II operates out of the same location as SIMMCO. Further, SIMMCO II has the same or similar owners and supervisors, business model, employees, equipment, facilities, and provides the same or similar services as SIMMCO.

27. Through its owners, attorneys, and employees, as well as its relationship with SIMMCO, SIMMCO II had notice of the FLSA claims in this lawsuit against SIMMCO and also was aware of the unlawful pay practices at issue in this lawsuit.

28. SIMMCO has filed for bankruptcy and now is in liquidation. Accordingly, it is likely that it is incapable of satisfying a judgment in favor of Plaintiffs and opt-in Plaintiffs.

29. SIMMCO II is an active business in good standing with the Tennessee Secretary of State and has not filed for bankruptcy. Accordingly, SIMMCO II can satisfy a judgment in favor of Plaintiffs and opt-in Plaintiffs, whether through execution upon assets or through a payment plan.

(Prop. 2nd Amend. & Suppl. Compl.).[4]

These allegations track the considerations for determining successor liability in the federal employment law context. In *Powe v. May*, the Fifth Circuit assumed without deciding that the federal successorship doctrine[5] applied to the FLSA. *Powe*

---

[4] The Blurtons contest the veracity of plaintiffs' allegations. *See* Opp. Memo., pg. 20 n. 3-4. At the pleading stage, however, the court must "accept[ ] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir.2012).

[5] The general rule is that when a company is sold in an asset sale, the buyer ordinarily acquires the company's assets, minus its liabilities. *Allen v. Priority Energy Servs., LLC*, No. 16-0047, 2017 WL 11037104, at *15 (W.D. Tex. Sept. 1, 2017) (citation omitted). However, "[u]nder federal common law, there is an exception to this general rule known as the doctrine of successorship or successor liability." *Id*.

*v. May*, 62 Fed. Appx. 557 (5th Cir.2003).[6] The court then proceeded to consider the first three factors of a nine factor test that it used in an earlier decision to determine whether successor liability should be imposed in a discrimination case:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

*Id.* (citing *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 750 (5th Cir. 1996)).[7]

In *Rojas,* however*,* the Fifth Circuit explained that it was the first *two* factors that were critical. *Rojas, supra*.

Whether the successor liability inquiry is properly focused upon two or three factors is immaterial here; plaintiffs alleged facts to support all three. First, plaintiffs alleged that SIMMCO II has the same owners, supervisors, business model, employees, equipment, and facilities as SIMMCO. In other words, there is a continuity of operations. Second, via common ownership and continuity of operations, SIMMCO II had knowledge of the pending lawsuit. Third, SIMMCO plausibly does not have sufficient assets to provide relief because it is

---

[6] Other circuit courts have recognized that the federal successorship doctrine applies to FLSA claims. *Robinson v. Ultimate Sports Bar, LLC*, No. 12-2311, 2014 WL 2050516, at *3 (N.D. Ga. May 19, 2014), *aff'd on other grounds sub nom. Robinson v. Alston*, 596 Fed. Appx. 871 (11th Cir.2015) (collecting cases).

[7] The panel in *Powe* modified the order of the factors, and, without explanation, changed the factor that focused upon the ability of the *predecessor* to provide relief, to the ability of the *successor* to provide relief. *See Powe, supra*. Under the Fifth Circuit's rule of orderliness, the court will apply the test as stated in the published decision of the earlier panel, i.e., *Rojas*.

in the process of being liquidated in bankruptcy. Finally, SIMMCO II purchased as least some assets from the bankruptcy estate. Plaintiffs' allegations suffice to state a plausible claim for relief against SIMMCO II, along with the reasonable *expectation* that discovery will reveal relevant evidence for each of the elements of the claim. *Twombly, supra*.

The Blurtons further argue that plaintiffs lack standing to bring a claim against SIMMCO II under a "mere continuation" theory because that claim belongs to the bankrupt estate and must be brought by the trustee. *See In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir.2014). To be considered "property of the estate,"

> the claim must be a "general one, with no particularized injury arising from it." On the other hand, if the claim is specific to the creditor, it is a "personal" one and is a legal or equitable interest only of the creditor. A claim for an injury is personal to the creditor if other creditors generally have no interest in that claim.

*In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir.2014).

Furthermore, the bankruptcy trustee is the proper party to advance a cause of action that constitutes "property of the estate" because it inures to the benefit of all the creditors. *Id*.

On the present record, the court is not persuaded that plaintiffs' attempts to pursue their FLSA claim against SIMMCO II via a successor liability theory is a "general claim with no particularized injury arising from it." Rather, courts have recognized the distinct nature of employment related claims and the vital policy considerations that permit successor liability as to those claims. *See e.g.*, *Anderson v. J.A. Interior Applications, Inc.*, No. 97-4552, 1998 WL 708851, at *6 (N.D. Ill. Sept. 28, 1998).

Furthermore, even if it is later determined that the plaintiffs' FLSA/successor liability claim against SIMMCO II *does* constitute property of the estate, the trustee always could abandon the claim in favor of plaintiffs, substitute himself as plaintiff herein, or plaintiffs could

14

obtain leave from the bankruptcy court to pursue the instant claim. *See* 11 U.S.C. § 554 (abandonment). In other words, the Blurtons have not established that plaintiffs do not state a claim for relief against SIMMCO II.

## **Conclusion**

With the exception of plaintiffs' claims against Pegram and Carrasco, the court finds that plaintiffs' proposed amendment is not futile, and therefore, leave should be granted.

For the foregoing reasons,

IT IS ORDERED that plaintiffs' motion for leave to file second amended complaint [doc. # 122] is GRANTED-IN-PART and DENIED-IN-PART. Within the next seven (7) days from the date of this order, plaintiffs are granted leave to prepare and file a second amended complaint that joins only: David Payne, Randy Sawdey, "Southern Industrial Mechanical Maintenance Company II" (SIMMCO II), and The Blurton Group, L.L.C.

In Chambers, at Monroe, Louisiana, this 3rd day of July 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE