UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

SHANNON RULE, ET AL.                              CIVIL ACTION NO: 16-CV-01408

VERSUS                                            JUDGE ELIZABETH E. FOOTE

SOUTHERN INDUSTRIAL MECHANICAL                    MAGISTRATE JUDGE HAYES
MAINTENANCE CO., L.L.C., ET AL.

## MEMORANDUM RULING

This case arises out of a dispute between employees and their employer, Southern

Industrial Mechanical Maintenance Company, LLC ("SIMMCO"), about whether payments

SIMMCO made to its traveling employees were properly excluded from their regular rate of pay

under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201, *et seq.* Now pending before

the Court are three motions: a Motion for Discovery Pursuant to Rule 56(d) filed by Plaintiffs

[Record Document 163], a Motion for Summary Judgment filed by Defendants David and Ginger

Blurton ("the Blurtons"), the owners of SIMMCO, [Record Document 154], and a Motion for

Summary Judgment as to FLSA Liability filed by Plaintiffs [Record Document 167]. For the

reasons discussed below, Plaintiffs' Motion for Discovery Pursuant to Rule 56(d) [Record

Document 163] is **DENIED**. The Blurtons' Motion for Summary Judgment [Record Document

154] is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to the applicable

statute of limitations and **DENIED** as to FLSA liability and liquidated damages. Plaintiffs' Motion

for Summary Judgment as to FLSA liability [Record Document 167] is **DENIED**.

## FACTUAL BACKGROUND

On October 7, 2016, Plaintiffs Shannon Rule and Karina Esquivel ("Plaintiffs") filed the

instant collective action under the FLSA on behalf of themselves and all other similarly-situated

current and former employees of SIMMCO, seeking unpaid overtime pay, liquidated damages, prejudgment interest, attorneys' fees, and costs. Record Document 1, ¶s 1 & 22. Plaintiffs allege that they were hourly, non-exempt employees who were entitled to overtime pay under the FLSA. *Id.* at ¶ 9. Plaintiffs claim that SIMMCO paid them per diems for travel expenses and then failed to include those per diems in their regular rate of pay when calculating their overtime pay, in violation of the FLSA. *Id.* at ¶s 11–12. Plaintiffs argue that the per diems should have been included in their regular rate of pay because SIMMCO's policy tied the amount of the per diems to the number of hours an employee worked. *Id.* at ¶s 10–11 (citing *Newman v. Advanced Tech. Innovation Corp.,* 749 F.3d 33, 38 (1st Cir. 2014)).

This case was conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b) on April 24, 2017. Record Document 45. In addition to the two named Plaintiffs, over 170 additional Plaintiffs have opted-in to this litigation. On June 14, 2017, Plaintiffs amended their complaint to include David and Ginger Blurton as individual defendants. Record Document 85. On February 12, 2018, this case was stayed as to SIMMCO pursuant to 11 U.S.C. § 362(a), after SIMMCO filed a Suggestion of Bankruptcy into the record. Record Document 108. Plaintiffs amended their complaint again on July 10, 2019, to include David Payne, Randy Sawdey, Southern Industrial Mechanical Maintenance Company II, L.L.C. ("SIMMCO II"), and The Blurton Group, L.L.C. as Defendants. Record Document 148.

The Blurtons filed a motion for summary judgment arguing that they are entitled to a dismissal of Plaintiffs' claims because the facts show that SIMMCO's per diem policy did not violate the FLSA as a matter of law. Record Document 154, p. 2. In the alternative, they argue that if they are found liable for an FLSA violation, the Court should also find (1) that the FLSA's standard two-year statute of limitations should apply in this case rather than the three-year statute

of limitations for willful violations and (2) that Plaintiffs are not entitled to recover liquidated damages under the FLSA. *Id.* Plaintiffs subsequently filed a motion for discovery pursuant to Federal Rule of Civil Procedure 56(d), requesting further discovery on the issue of whether Defendants willfully violated the FLSA. Record Document 163, p. 1. Finally, Plaintiffs filed their own motion for summary judgment on the issue of FLSA liability. Record Document 167.

## PLAINTIFFS' RULE 56(d) MOTION FOR DISCOVERY

Plaintiffs have filed a Motion for Discovery pursuant to Federal Rule of Civil Procedure 56(d), requesting additional time for discovery on the issue of willfulness. Record Document 163. Plaintiffs also request the costs and attorneys' fees incurred in the filing of this motion and request that the Court enter an order regarding Defendants' failure to comply with discovery obligations. *Id.*[1] Plaintiffs state that, although they have been diligent in conducting discovery, they have been unable to locate or depose Vanessa Carrasco ("Carrasco") or David Payne ("Payne"), two of the witnesses SIMMCO named in discovery, or Randy Sawdey ("Sawdey"), a recently added Defendant. Record Document 163-1, pp. 2–3. Plaintiffs also claim that David and Ginger Blurton have not been fully deposed because they have not been questioned about 7,000 pages of personnel files that Plaintiffs received after the Blurtons had already been deposed. *Id.* at 3–4.

Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to summary judgment], the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

---

[1] Plaintiffs make these two requests in their motion [Record Document 163], but they are not addressed in the Memorandum in Support of that motion [Record Document 163-1].

3

(3) issue any other appropriate order."

Fed. R. Civ. P. 56(d). Rule 56(d) discovery motions are intended to "safeguard non-moving parties from summary judgment motions that they cannot adequately oppose" and are therefore "broadly favored and should be liberally granted." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006). However, a nonmovant may not "simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980). This is especially true where "ample time and opportunities for discovery have already lapsed." *Id.*

A nonmovant must present "specific facts explaining the inability to make a substantive response as required by Rule 56(e)" and specifically demonstrate "'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *Id.* (quoting *Willmar Poultry Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir. 1975), *cert. denied*, 424 U.S. 915 (1976)). A plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment may be cut off "when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990). Furthermore, a Rule 56(d) motion may be denied if a party had the opportunity to conduct discovery but did not diligently pursue it. *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1267 (5th Cir.1991).

The Court begins by analyzing the facts that Plaintiffs claim they will uncover through further discovery.[2] Plaintiffs state that Carrasco, SIMMCO's former Human Resources Manager,

---

[2] The Court notes that Plaintiffs' motion contains complaints about Defendants' behavior during the discovery process that are unrelated to the issue of willfulness. Plaintiffs allege that Defendants have been dilatory during discovery. Record Document 163-1, p. 2. As evidence of this

authored and received several emails regarding the per diem policy and likely had "substantial responsibility" over SIMMCO's FLSA compliance. Record Document 163-1, p. 3. As to Payne, Plaintiffs state that he also authored and received emails regarding the per diem policy and was one of the highest management-level employees working for SIMMCO in Shreveport. *Id.* Plaintiffs do not provide the Court with any specific reasons why it is relevant to the issue of willfulness that they depose Sawdey or re-depose David and Ginger Blurton.

The record already contains several facts relevant to the issue of willfulness. The Blurtons have represented that they created SIMMCO's per diem policy. Record Document 154-3, p. 3, *Ginger Blurton's Responses to Interrogatories.* In her declaration, Ginger Blurton stated that she was not aware of any employees complaining that the per diem policy violated the FLSA, nor had SIMMCO ever been sued for an FLSA violation regarding its calculation of the regular rate of pay. Record Document 154-2, p. 3. Plaintiffs have not identified any facts they hope to find through further discovery or facts indicating that Carrasco, Payne, or Sawdey would be able to provide additional information as to willfulness. The closest Plaintiffs come to explaining the need for additional discovery is stating that Carrasco was likely responsible for SIMMCO's FLSA compliance. However, this reasoning is still vague. Plaintiffs do not state what facts might be adduced from Carrasco, or any other witness, that would influence the pending motion for summary judgment on the issue of willfulness. *C.B. Trucking, Inc. v. Waste Mgmt., Inc.*, 137 F.3d

---

dilatoriness, Plaintiffs point to David Blurton's July 2019 deposition wherein he states that he did not know he was a defendant in this suit, did not review the discovery responses submitted in his name, and did not search for any documents that were responsive to Plaintiffs' discovery requests. *Id.*; *see* Record Document 162-2, pp. 28–37. The Court finds these revelations troubling. However, Plaintiffs have not explained why David Blurton's statements are relevant to the instant motion for an extension of discovery or the issue of whether the Blurtons willfully violated the FLSA. A Rule 56(d) motion serves a narrow purpose and is not the proper vehicle for a plaintiff to air all of its discovery-related grievances against a defendant. Fed. R. Civ. P. 56(d).

41, 44 (1st Cir. 1998) (quoting *Resolution Trust Corp. v. N. Bridge Assocs.*, 22 F.3d 1198, 1203 (1st Cir. 1994)). Because Plaintiffs have failed to demonstrate how further discovery will create a genuine issue of material fact as to willfulness, the Court may grant the Blurtons' motion for summary judgment over Plaintiffs' request for an extension of discovery. *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 720 (5th Cir. 1999).

Even if Plaintiffs had outlined specific facts that they hoped to find through further discovery, the Rule 56(d) motion would still fail because Plaintiffs cannot establish that they have diligently pursued the requested discovery. *Int'l Shortstop, Inc.*, 939 F.2d at 1267. Plaintiffs have known that the applicable statute of limitations and willfulness were going to be contested in this case since SIMMCO filed its answer on November 16, 2016. Record Document 8, p. 9. Furthermore, SIMMCO's discovery responses from January 9, 2017,[3] identified Carrasco and Payne, along with David and Ginger Blurton, as individuals who had "information related to any portion of the matters alleged in the Complaint" and identified Sawdey as an individual that supervised Plaintiffs during the time they worked for SIMMCO. Record Document 21-2, pp. 2 & 5. Thus, Plaintiffs have known that Carrasco, Payne, and Sawdey were relevant witnesses in this litigation for more than three years.

This litigation is nearing four years old. Discovery in this case has been open since September 6, 2017, when the first scheduling order was entered. Record Document 104. After SIMMCO notified the Court that it had filed for Chapter 11 Bankruptcy [Record Document 108], which stayed the case as to SIMMCO only,[4] no party took any action in this case for nearly a year

---

[3] The discovery responses state that they were submitted on January 9, 2016. Record Document 21-2, p. 29. Because this lawsuit was not filed until October of 2016, the Court presumes that the date contains a typographical error and that the discovery responses were actually submitted on January 9, 2017.

[4] *See* 11 U.S.C. § 362(a)(1).

until the Court convened a status conference to discuss the upcoming trial and pretrial conference. Record Document 109. As the Magistrate Judge noted, SIMMCO's bankruptcy caused both parties to be "less than diligent in prosecuting this case to conclusion." Record Document 129, p. 4. Furthermore, the Court is unpersuaded by Plaintiffs' assertions that they have not had sufficient time to conduct discovery as to the newly added Defendants. The pending summary judgment motion [Record Document 154] was filed by the Blurtons and, as such, the Court's analysis of the applicable statute of limitations applies only to the Blurtons. Plaintiffs are free to continue to conduct discovery regarding willfulness as to all other Defendants.

The Court finds that "ample time and opportunities for discovery have already lapsed" and that Plaintiffs have not identified the specific facts that they hope to produce through additional discovery but have merely asserted that additional discovery will produce "needed, but unspecified, facts." *Spence & Green Chem. Co.*, 612 F.2d at 901. Therefore, Plaintiffs' Rule 56(d) motion [Record Document 163] is **DENIED**. The Court also **DENIES** Plaintiffs' request for the costs and attorneys' fees incurred in filing this motion and declines to enter any order regarding Defendants' alleged failure to comply with discovery obligations. *See* Record Document 163.

## CROSS MOTIONS FOR SUMMARY JUDGMENT

### I.    Legal Standard

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving

party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23. However, "if the movant bears the burden of proof on an issue, . . . he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

   If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

   Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

## II.   **The Blurtons' Motion for Summary Judgment**

### A.   **FLSA Liability**

Congress enacted the FLSA so that each employee covered by the Act would receive "[a] fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 739 (1981) (internal quotation marks and citations omitted). Under the FLSA, a non-exempt employee who works more than 40 hours in one week must be paid overtime at a rate of no less than one and one-half times his "regular rate" of pay. 29 U.S.C. § 207(a)(1). Thus, the rate of overtime pay an employee receives is dependent upon his regular rate.

Section 207(e) of the FLSA requires that "all remuneration for employment paid to, or on behalf of, the employee" be included in an employee's regular rate of pay. 29 U.S.C. § 207(e). Section 207(e) also provides seven exceptions to this general rule. *Id.* Any remuneration that does not fall within one of those seven statutory exceptions must be included in the calculation of an employee's regular rate. 29 C.F.R. § 778.200(c). The exception relevant to this case states that the regular rate does not include "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments which are not made as compensation for his hours of employment." 29 U.S.C. § 207(e)(2). There is a statutory presumption that remuneration in any form is included in the regular rate calculation. *Madison v. Res. for Human Dev., Inc.*, 233 F.3d 175, 187 (3d Cir. 2000). Furthermore, an employer has the burden of establishing that a payment to an employee falls under one of the exceptions in § 207(e) and should not be included in an employee's regular rate. *Id.* Payments such as those described in § 207(e)(2) are sometimes called "per diems."

9

The regulations interpreting this subsection of the FLSA provide further guidance regarding an employer's reimbursement of an employee's work-related expenses. Section 778.217(a) provides that payments made to cover an employee's travel costs are "not included in the employee's regular rate (if the amount of the reimbursement reasonably approximates the expense incurred)." 29 C.F.R. § 778.217(a). The Department of Labor's Wage and Hour Field Operations Handbook ("the Handbook") also discusses an employer's reimbursement of an employee's work-related travel expenses:

> If the amount of per diem or other subsistence payment is based upon and thus varies with the number of hours worked per day or week, such payments are a part of the regular rate in their entirety. However, this does not preclude an employer from making proportionate payments for that part of a day that the employee is required to be away from home on the employer's business. For example, if an employee returns to his/her home or employer's place of business at noon, the payment of only one-half the established per diem rate for that particular day would not thereby be considered as payment for hours worked and could thus be excluded from the regular rate.

Wage & Hour Div., Dep't of Labor, Field Operations Handbook § 32d05a(c) (2016). The Court is not bound by the Handbook but may consider its persuasive effect. *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 n.6 (5th Cir. 2010) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

In the instant case, SIMMCO's employees were often required to travel for work and work away from home. Record Document 154-1, p. 8. Accordingly, SIMMCO paid its employees per diems as reimbursements for the cost of lodging, evening meals, and incidental travel expenses. *Id.* Traveling employees received an hourly wage plus a flat rate per diem for each day they worked. *Id.* at 9. During the times relevant to this case, SIMMCO's per diem policy stated:

> 1. <u>You Must Work</u> 80% of the scheduled work day in order to receive Per Diem for that day. <u>No Per Diem will be paid if you do not work at least 80% of your scheduled hours.</u>

> EXAMPLE: If the scheduled hours are 10 for that day you must work a minimum of 8 hours to receive Per Diem for that day.
>
> 2. You will be docked for any hours short of a full day.
>
> EXAMPLE: You are scheduled for a 10-hour day and you arrive one (1) hour late for a total of 9 hours worked. Your Per Diem Will be docked 1 hour.
>
> 3. You can request advances on your Per Diem, $100.00 per day limit on all advances.

Record Document 154-4, p. 50 (emphasis in original). Under this policy, traveling employees could receive (1) a full per diem for working all of or more than their scheduled shift for that day; (2) no per diem for working less than 80% of the hours in their scheduled shift; or (3) a pro-rated per diem for working less than 100% but more than 80% of their scheduled shift. Record Document 154-1, pp. 18–19. Neither Plaintiffs nor the Blurtons dispute the content of SIMMCO's per diem policy or how it functioned. The question before the Court is a legal one. To prevail on summary judgment, the Blurtons must demonstrate that the payments at issue in this case fall into the FLSA's exception for the reimbursement of travel expenses in § 207(e)(2).

The Court finds that the Blurtons have failed to carry their burden for several reasons. First, SIMMCO's policy varied the per diem amounts by the number of hours worked and therefore the per diems did not "reasonably approximate the expenses incurred." *See* 29 C.F.R. § 778.217(a). Second, the proportionate reduction that SIMMCO made to the per diem amounts was not sanctioned by the Handbook. Finally, the per diem policy was intended to encourage regular work attendance rather than to reimburse employees for their travel expenses. The Court will analyze each of these reasons in turn.

1.   <u>The per diems varied with the hours worked and therefore were not reasonable estimates of travel expenses</u>

Multiple circuit courts have recognized that a per diem that varies in amount based on the number of hours worked must be included in an employee's regular rate. *Baouch v. Werner Enters., Inc.*, 908 F.3d 1107, 1116 (8th Cir. 2018); *Sharp v. CGG Land (U.S.) Inc.*, 840 F.3d 1211, 1215–16 (10th Cir. 2016); *Newman*, 749 F.3d at 39; *Gagnon*, 607 F.3d at 1041. The Fifth Circuit explicitly acknowledged this rule in *Gagnon*, 607 F.3d at 1041 (citing *Handbook*, § 32d05a(c)). In *Newman*, the First Circuit held that the per diems should have been included in the plaintiff-employees' regular rate of pay because the number of hours an employee worked was the only number that varied in the formula for calculating per diem amounts. 749 F.3d at 38. Thus, an employee who worked seven hours a day and an employee who worked 12 hours a day would earn different amounts of per diem under the defendant-employer's formula but would earn identical amounts of per diem if the formula was based upon the number of days an employee worked. *Id.* at 38–39.

Despite some differences between the per diem policy in the instant case and the one in *Newman*, the Court finds that same result should apply here. SIMMCO's policy did not assign per diems a set hourly value, nor were employees able to increase the amount of their per diems by working a greater number of hours. Record Document 154-4, p. 50. Indeed, the per diems were not reduced for *every* hour worked, but they were reduced or eliminated based upon the amount of hours an employee worked of his scheduled shift. *Id.* Therefore, to say that the per diems did not vary based on the number of hours worked is factually false.

Furthermore, under SIMMCO's policy, employees who worked up to 79% of their scheduled shift would receive no per diem at all even though they incurred the same travel expenses as if they had worked 80% or more of their scheduled shift. *Id.*; Record Document 154-

4, pp. 14–15. Like in *Newman*, if SIMMCO's policy was based on the days worked instead of hours, an employee who worked 79% of her scheduled shift would receive the same amount of per diem as an employee who worked 80% of her scheduled shift. 749 F.3d at 39. The Court finds that these per diems cannot qualify as "reasonable payments for traveling expenses" because they were reduced or eliminated based on the number of hours worked rather than by any changes in travel expenses. *See* 29 U.S.C. § 207(e)(2).

The only case that the Blurtons have cited in support of their argument that SIMMCO's per diem policy did not violate the FLSA is *Clarke v. AMN Services, LLC*, CV:16-4132-DSF(KSx), 2018 WL 3357467, at *2 (C.D. Cal. June 26, 2018). In *Clarke*, a federal district court rejected the First Circuit's approach in *Newman* and its reading of the Handbook's provisions. *Id.* The court interpreted the Handbook to mean that a per diem only varies by the hours worked when "the expense reimbursement is purely calculated based on hours, not on any estimate of actual expenses." *Id.* The court concluded that the per diems were properly excludable from the regular rate because the amount of the per diems started at a reasonable reimbursement level and were then reduced for time that the employer deemed "not to have been used for [its] benefit." *Id.*

Aside from the obvious disparity in precedential weight between an unpublished district court opinion and a published circuit court opinion, the Court finds the *Newman* court's reasoning to be more persuasive because it adheres to the purpose of the exception provided in § 207(e)(2), which is to reimburse an employee for travel-related or other expenses incurred on behalf of his employer. 29 U.S.C. § 207(e)(2). Additionally, several district court decisions issued since *Clarke* have eschewed its holding. First, in *Junkersfield v. Per Diem Staffing Systems, Inc.*, the court explicitly rejected *Clarke* and found that reducing per diem amounts based on the number of shifts worked "inextricably tie[d] the payments to the hours worked, rendering them part of the

13

employee's regular rate." 4:18-cv-07795-KAW, 2019 WL 2247768, at *3 (N.D. Cal. May 24, 2019). Next, in *Howell v. Advantage RN, LLC*, the court found that the employer-defendant should not have excluded per diems from its employees' regular rate in part because "that the per diem is paid weekly and adjusted based on hours or shifts worked makes the per diem function more as remuneration for hours worked than as reimbursement for expenses incurred on behalf of Defendant." 401 F. Supp. 3d 1078, 1090 (S.D. Cal. Aug. 16, 2019). Finally, the court in *Dittman v. Medical Solution, L.L.C.* found the reasoning in *Junkersfield* to be more persuasive than the reasoning in *Clarke* based on the fact that traveling employees are away from home for their entire assignment, even if they do not work all of their scheduled shifts. 2:17-cv-01851-MCE-CKD, 2019 WL 4302752, at *2 (Sept. 11, 2019). Based on these cases and the previously cited circuit court decisions, *Clarke* appears to be an outlier in the jurisprudence surrounding per diems and the Court declines to follow its holding.

### 2.   SIMMCO's proportionate reductions are not sanctioned by the Handbook

The Blurtons argue that SIMMCO's per diem policy is valid because the Handbook explicitly authorizes a proportionate reduction of an employee's per diems. Record Document 154-1, pp. 15–16. After stating that per diems that are "based upon and thus var[y] with the number of hours worked per day or week" are part of the regular rate, the Handbook goes on to say that an employer is not precluded from "making proportionate payments for that part of a day that the employee is required to be away from home on the employer's business." *Handbook*, § 32d05a(c). The Handbook provides an example of an employee returning to his home or his employer's place of business at noon. *Id.* In this scenario, according to the Handbook, that employee could be paid only one-half of the established per diem rate for that particular day and that payment would not be considered payment for hours worked. *Id.*

The court in *Newman* found that these two provisions created "some tension" in the Handbook's guidance because, in a typical eight-hour work day, "paying an employee for half of a day's per diem yields the same result as paying for four hours' worth of per diem." 749 F.3d at 37–38. Based on this tension, the court reasoned that the Handbook is not concerned about the end result of paying a half day's per diem but is instead concerned about the method of calculation and prescribes that days rather than hours are the correct unit of measurement. *Id.* at 38. The court concluded that "[i]f the per diem method makes reductions from [the] maximum on an hourly basis—such that it would reduce the total per diem by a mere hour's worth—it runs afoul of the Handbook's guidance." *Id.* The Court agrees with the *Newman* court's analysis on this point as well. In this case, SIMMCO's error was not in the fact that it proportionately reduced the per diems but that its formula for doing so was based on hours rather than days.

The charts contained in Ginger Blurton's declaration show the times that the named Plaintiffs had their per diems reduced or eliminated under SIMMCO's policy. Record Document 154-2, pp. 2–3. These charts demonstrate that SIMMCO reduced per diems by the hour and sometimes even by the half hour. *Id.* These reductions were not based on whether the employee was at home or traveling for part of the day, as sanctioned by the Handbook, but were based on the hours worked. Therefore, although SIMMCO is correct that the Handbook approves of proportionate reductions, the type of proportionate reduction sanctioned by the Handbook is not present in this case.

      3.    <u>The per diem policy was designed to encourage work attendance</u>

Setting aside the way that SIMMCO's per diem policy functioned, it is clear that the policy was intended to encourage regular work attendance. In their "Statement of Uncontested Material Facts," the Blurtons state that the per diem policy was implemented sometime around 2007 in

order to prevent employees from collecting a full day's per diem after performing less than a half-day of work. Record Document 154-5, p. 3. In her deposition, Ginger Blurton stated that the per diem policy was intended to be an incentive to keep SIMMCO's employees working as scheduled. Record Document 154-4, pp. 15–16. She stated that SIMMCO "wanted [the employees] to show up for work so that they would be there and be accountable for the hours that they were scheduled to work." *Id.* at 16. David Blurton stated that he put the per diem policy in place so that "people would come in and start working their schedule." Record Document 162-2, p. 26. He also stated that after the per diem policy was put in place, "they all started coming into work and doing right." *Id.* at 25. Also revealing is the copy of the per diem policy that the Blurtons have provided. Record Document 154-4, p. 50. On the first half of the page is the per diem policy. On the second half of the page is SIMMCO's attendance policy, reiterating that employees must work their scheduled shifts. *Id.*

Plaintiffs argue that the payments made under the per diem policy actually functioned as attendance bonuses and should have been included in their regular rate. Record Document 162, pp. 13–14 (citing *Bibb Mfg. Co. v. Walling*, 164 F.2d 179, 180 (5th Cir. 1947)). The FLSA's implementing regulations state that "[b]onuses which are announced to employees to induce them to work more steadily . . . are regarded as part of the regular rate of pay. Most attendance bonuses . . . are in this category." 29 C.F.R. § 778.211(c). The Blurtons respond that the per diems were not attendance bonuses because (1) Ginger Blurton denied that they were "attendance incentives" in her deposition; (2) Plaintiffs introduced no evidence showing that SIMMCO "announced a bonus;" and (3) the per diems were not intended for employees to work more steadily but the policy was intended to prevent employees from taking advantage of SIMMCO by collecting a

day's worth of per diem after performing only a small amount of work. Record Document 171, pp. 1–2.

None of the Blurtons' arguments are persuasive on this point. First, Ginger Blurton's assertion that the per diems were not attendance incentives is irrelevant because an employee's regular rate of pay is not determined by the labels given to certain payments by the parties but must be drawn from what happens under the employment contract. 29 C.F.R. § 778.108 (citing *Bay Ridge Operating Co. v. Aaron*, 344 U.S. 446, 461 (1948)). Second, SIMMCO may not have formally announced the per diem policy as a bonus, but every traveling employee was subject to the per diem policy and thus knew about it. Record Document 154-5, p. 2; *see also* Record Document 154-4, p. 50 (copy of SIMMCO's per diem policy signed by Shannon Rule). Third, the evidence shows that the per diems were being used to encourage SIMMCO's employees who traveled away from home to work more steadily, that is, to work their scheduled shift. Record Document 154-4, pp. 15–16.

Even if the Court agreed with the Blurtons that the per diems do not qualify as "attendance bonuses" under 29 C.F.R. § 778.211(c), they have failed to demonstrate that the per diems fall into one of the seven categories of payments that can be excluded from an employee's regular rate pursuant to 29 U.S.C. 207(e)(2). Therefore, they cannot prevail on their motion for summary judgment.

4.   Conclusion

The Fifth Circuit has stated that each case should be judged by its own facts when evaluating whether a per diem paid under the FLSA is reasonable and therefore properly excluded from the regular rate of pay. *Berry v. Excel Grp., Inc.*, 288 F.3d 252, 254 (5th Cir. 2002). The Blurtons contend that if the Court finds SIMMCO's per diem policy to be impermissible under the

17

FLSA, the Court would be rejecting the Fifth Circuit's case-by-case approach and "effectively ban[ning] all proportionate payments of per diem." Record Document 154-1, p. 12. To the contrary, by finding that the per diems should have been included in SIMMCO's employees' regular rate of pay, the Court announces no such categorical ban. Instead, the Court finds that, based on the facts and circumstances unique to this case, what SIMMCO labeled as per diems were not "reasonable payments for traveling expenses" that could be excluded from the regular rate of pay pursuant to 29 U.S.C. § 207(e)(7). The Court holds that the FLSA does not permit employers to combine a per diem and an attendance incentive into one payment as SIMMCO has done in this case. Because the Court finds that SIMMCO's policy violated the FLSA, the Blurtons' motion for summary judgment is hereby **DENIED** [Record Document 154] as to FLSA liability.

**B.      Applicable Statute of Limitations**

Now that the Court has found that an FLSA violation occurred in this case, the Court must determine the applicable statute of limitations. The normal statute of limitations for an FLSA violation is two years. 29 U.S.C. § 255(a). This time period is extended to three years when the cause of action arises out of an employer's willful violation. *Id.* The Blurtons assert that the Court should grant partial summary judgment on the issue of willfulness and apply the two-year statute of limitations to Plaintiffs' claims. Record Document 154-1, p. 26.

1.      <u>Arguments of the parties</u>

The Blurtons argue that Plaintiffs cannot demonstrate that SIMMCO willfully violated the FLSA. Record Document 154-1, p. 27. In support, they point to Ginger Blurton's testimony that, prior to the instant lawsuit, she was unaware of any employee complaining that SIMMCO's per diem policy violated the FLSA as it related to overtime calculation. *Id.* She also stated that SIMMCO had never been sued for improperly calculating its employees' regular rate of pay and

that SIMMCO's management had never heard of the *Newman* or *Gagnon* cases. *Id.*; *see also* Record Document 154-2, p. 3. The Blurtons argue that, at most, Plaintiffs can show that SIMMCO did not consult with an attorney regarding the FLSA or have an "express basis" upon which to conclude that its pay practices were legal under the FLSA, which the Fifth Circuit has repeatedly held to be insufficient to demonstrate willfulness. Record Document 154-1, p. 27.

In response, Plaintiffs claim that the three-year statute of limitations may apply when the employer "simply disregarded the possibility that it might be violating the FLSA." Record Document 162-1, p. 28. Plaintiffs state the Blurtons "knowingly disregard[ed] the many questions and concerns expressed by employees about the SIMMCO Per Diem Policy and its compliance with the FLSA," despite knowing that the policy did not reasonably approximate travel expenses and that it varied with hours worked. Record Document 162-1, p. 29. Accordingly, Plaintiffs claim that there is a factual dispute as to whether the Blurtons willfully violated the FLSA that prevents summary judgment on this issue. *Id.*

2.    Applicable Law

In *McLaughlin v. Richland Shoe Co.*, the Supreme Court considered "the meaning of the word 'willful' as used in the statute of limitations applicable to civil actions to enforce the [FLSA]." 486 U.S. 128, 129 (1988). The Court stated that by establishing two different statutes of limitation, one for willful and one for ordinary violations, "Congress intended to draw a significant distinction between ordinary violations and willful violations." *Id.* at 132. The Court also observed that the word "willful" is generally used to refer to conduct that is more than negligent. *Id.* at 133. Therefore, the Court concluded that the three-year statute of limitations for willful violations could only apply when the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* This willfulness standard has been adopted by the

19

Fifth Circuit. *See Steele v. Leasing Enter., Ltd.*, 826 F.3d 237, 248 (5th Cir. 2016). Under the FLSA, a plaintiff has the burden of demonstrating willfulness on the part of a defendant. *Id.*

3.   <u>Analysis</u>

The Court begins by rejecting Plaintiffs' argument that the Blurtons' willfulness can be demonstrated by the email inquiries SIMMCO received from its employees regarding its per diem policy. *See* Record Document 162, p. 29. None of these emails reference the FLSA or FLSA compliance. Record Document 162-8. In one email, a SIMMCO supervisor questioned the fairness of denying an employee any per diem when that employee had worked a significant portion of his shift. *Id.* at 5. Although this email complained about a consequence of the per diem policy, it did not concern the central issue of this lawsuit: whether the per diems should have been included in the regular rate. *Id.* Contrary to Plaintiffs' arguments, the fact that the Blurtons knew the per diem policy varied with the number of hours an employee worked and did not reasonably approximate employee travel expenses does not establish a willful FLSA violation outside of the context of the statute. *See* Record Document 162, p. 29.

The record does show that the Blurtons took no actions to ensure that SIMMCO's per diem policy complied with the FLSA. During her deposition, Ginger Blurton identified several documents as the "type of documents that [she] studied to learn about the rules for per diem." Record Document 154-4, p. 29. These documents included an IRS publication providing guidance for "Travel, Entertainment, Gift, and Car Expenses" intended to be used for preparing 2010 tax returns and a blog post from 2007 about the amount of per diems that the IRS would exclude from income tax and payroll tax withholding *Id.* at 52–55 & 63. Nothing in either of those documents addressed the FLSA. *Id.* She also could not remember whether she had sought the advice of her attorney before enacting the per diem policy. *Id.* at 33. Most significantly, Ginger Blurton stated

that she never reviewed the policy for compliance with the FLSA because she "did not know to look for that" and thought that compliance with IRS guidelines would be sufficient for compliance with all of the federal government's requirements. *Id.* at 30–31.

In David Blurton's deposition, he stated that he had never seen a copy of SIMMCO's per diem policy before. Document 162-2, p. 6. He confirmed that he did not review the FLSA and that he had done nothing to ensure that the per diem policy complied with it. *Id.* at 10–11. He also stated that he was unaware of anyone other than Ginger Blurton taking any action to ensure FLSA compliance. *Id.* at 12. Thus, it is clear that the Blurtons took no measures to ensure that SIMMCO's per diem policy complied with the FLSA, specifically § 207(e)(2).

The Blurtons do not attempt to contradict the above evidence but claim that any FLSA violation they might have committed was not willful. Record Document 154-1, p. 27. In support of their position, the Blurtons cite *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 360 (5th Cir. 2015) (per curiam). *Id.* In *Zannikos*, the court stated that mere knowledge of the FLSA and its potential applicability does not suffice to establish willfulness, nor does conduct that is merely negligent or unreasonable. *Id.* The court also cited *McLaughlin* for the principle that "[a]n employer who 'act[s] without a reasonable basis for believing that it was complying with the [FLSA]'" or fails to seek legal advice regarding its payment practices is merely negligent. *Id.* (quoting *McLaughlin*, 486 U.S. at 134–35). Finally, the court stated that willfulness has been found where the evidence demonstrated that an employer knew it was violating the FLSA or ignored complaints that were brought to its attention. *Id.*

In response, Plaintiffs cite *Ramos v. Al-Bataineh*, 599 F. App'x 548, 551 (5th Cir. 2015) (per curiam), for the proposition that "[t]he three-year statute of limitations . . . may apply when [the employer] simply disregarded the possibility that it might be violating the FLSA." Record

21

Document 162, p. 28. This quote appears to conflict with the court's statements of law regarding willfulness in *Zannikos*.[5] 605 F. App'x at 360. However, this quote is not directly from the *Ramos* court but is a quote from an Eleventh Circuit case, *Allen v. Board of Public Education for Bibb County*, 495 F.3d 1306, 1324 (11th Cir. 2007), that the *Ramos* court referenced in a "see also" cite. *Ramos*, 599 F. App'x at 551. Furthermore, the Fifth Circuit decisions released since 2015 reflect the *Zannikos* court's approach. In *Steele v. Leasing Enterprises, Limited*, the Fifth Circuit stated that "[a] negligent violation is not a willful violation, and an unreasonable violation does not 'necessarily constitute a willful violation.'" 826 F.3d at 248 (quoting *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990)). In *Dacar v. Saybolt, L.P.*, the court stated that "[e]vidence that a defendant was merely negligent regarding FLSA requirements is insufficient to show willfulness." 914 F.3d 917, 926 (5th Cir. 2018).

Based on the Fifth Circuit's jurisprudence surrounding willfulness under the FLSA, the Court finds that Plaintiffs have failed to carry their burden of establishing that the Blurtons committed a willful FLSA violation. The Court finds that the Blurtons were negligent regarding the FLSA's requirements because they did not review SIMMCO's per diem policy for FLSA compliance. However, according to the Fifth Circuit, negligence as to the FLSA's requirements is insufficient to show willfulness. *Id*. Accordingly, the Blurtons' motion for summary judgment [Record Document 154] is **GRANTED** as to the issue of willfulness, and the ordinary two-year

---

[5] Coincidentally, these opinions were released just three days apart, *Zannikos* on March 27, 2015, and *Ramos* on March 30, 2015.  *See Zannikos,* 605 F. App'x at 360 and *Ramos*, 599 F. App'x at 551. In *Mohammadi v. Nwabuisi*, issued on March 25, 2015, the Fifth Circuit's statement of law aligned more with closely *Zannikos*, stating that an employer is merely negligent when it fails to seek legal advice regarding its payment practices without prior knowledge of an alleged violation. 605 F. App'x 329, 332 (5th Cir. 2015) (per curiam).

statute of limitations for FLSA actions shall apply to Plaintiffs' claims against the Blurtons. *See* 29 U.S.C. § 255(a).

### C.   Liquidated Damages

The Blurtons move for summary judgment on the issue of liquidated damages. Record Document 154-1, p. 28. The FLSA mandates liquidated damages, meaning damages equal to the amount of unpaid minimum wages or unpaid overtime compensation awarded, when an employer is found liable for an FLSA violation. 29 U.S.C. § 216(b). However, the FLSA contains an exception to the liquidated damages rule:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.

If an employer is found liable under 29 U.S.C. § 207, it has the "substantial burden of proving to the satisfaction of the trial court that its acts giving rise to the suit are both in good faith and reasonable." *Steele*, 826 F.3d at 246 (quoting *Mireles*, 899 F.2d at 1415) (internal quotations omitted). Good faith vests employers with a duty to investigate potential liability under the FLSA. *Id.* (quoting *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979)). An employer cannot rely on ignorance alone as reasonable grounds for believing its actions to be compliant with the FLSA. *Barcellona*, 597 F.2d at 468. Significant to this case, a finding that an employer did not willfully violate the FLSA does not preclude an award of liquidated damages. *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1262–63 (5th Cir. 1986).

In this case, the same evidence showing that the Blurtons were negligent rather than willful regarding FLSA compliance also establishes that the Blurtons did not act reasonably or in good

faith. Both Ginger and David Blurton admitted to never reviewing SIMMCO's policy for FLSA compliance. Record Documents 154-4, pp. 30–31; 162-2, pp. 10–11. Thus, they are prevented from being able to claim good faith, which requires an employer to investigate potential FLSA liability, or reasonableness, which cannot be based on ignorance alone. *Barcellona*, 597 F.2d at 468–69.

Because the Blurtons have not demonstrated that they acted in good faith and had reasonable grounds for believing that their actions did not violate the FLSA, the Court declines to exercise its discretion to shield them from liability for the liquidated damages prescribed by the FLSA. *See* 29 U.S.C. § 260. Thus, the Blurtons' motion for summary judgment is **DENIED** as to Plaintiffs' claims for liquidated damages.

### III.     Plaintiffs' Motion for Summary Judgment

Plaintiffs have filed a cross-motion for summary judgment on the issue of FLSA liability. Record Document 167. The Court has already denied the Blurtons' motion for summary judgment as to FLSA liability, but this holding does not automatically entitle Plaintiffs to summary judgment. *See supra*, Section II.A. The Court denied the Blurtons' motion because it found that SIMMCO's per diem policy constituted a violation of the FLSA. However, this denial does not automatically impose any liability on the Blurtons but merely reflects that they were not entitled to a judgment in their favor as a matter of law. *See* Fed. R. Civ. P. 56(a). Conversely, if the Court were to grant Plaintiffs' motion for summary judgment, it would be holding that Defendants are liable to Plaintiffs under the FLSA as a matter of law. Record Document 167.

In response to Plaintiffs' motion, the Blurtons, SIMMCO II, and The Blurton Group, L.L.C. filed an opposition in which they argue that Plaintiffs have failed to introduce evidence to support a finding that Defendants are employers subject to liability under the FLSA. Record

Document 181, p. 9. Defendants claim that only an employer can be held liable under the FLSA and that this absence of proof as to their employer status means that Plaintiffs are not entitled to a judgment of liability against them as a matter of law. *Id.* In response, Plaintiffs argue that they do not seek summary judgment on the employer status of any particular Defendant, but instead ask the Court to hold that the payments made pursuant to the SIMMCO's per diem policy should have been included in their regular rate. Record Document 184, p. 2. The Court notes that it has already reached this conclusion in its resolution of the Blurtons' motion for summary judgment. *See supra*, Section II.A.

Defendants are correct that "[t]o be bound by the requirements of the [FLSA], one must be an 'employer.'" *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984) (citing 29 U.S.C. §§ 206–07); *see also Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012) (affirming the district court's granting of summary judgment in favor of defendant on the grounds that he was not an employer under the FLSA). The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Fifth Circuit uses the "economic reality" test to assess whether there is an employer/employee relationship. *Gray*, 673 F.3d at 354. In cases involving more than one potential employer, the court "must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test." *Id.* at 355.

Plaintiffs have not attempted to argue that any Defendants are employers under the FLSA, nor have they identified evidence in the record that could support such a finding. Based on the portions of the record the Court has reviewed, the Court suspects that it may contain evidence showing that at least the Blurtons could be considered employers for FLSA purposes. However, the Court declines to sift through the record in search of such evidence or to make a legal argument

25

on behalf of Plaintiffs that they have explicitly declined to assert for themselves. *See* Record Document 184, p. 2. By filing this motion, Plaintiffs have sought judgment as a matter of law as to Defendants' liability under the FLSA, which they are not entitled to without producing any evidence that Defendants are employers under the FLSA. Accordingly, Plaintiffs' motion for summary judgment as to FLSA liability [Record Document 167] is **DENIED**.

## CONCLUSION

For the reasons discussed above,

Plaintiffs' Motion for Discovery Pursuant to Rule 56(d) [Record Document 163] is hereby **DENIED**.

The Blurtons' Motion for Summary Judgment [Record Document 154] is hereby **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to the applicable statute of limitations and **DENIED** as to FLSA liability and liquidated damages.

Plaintiffs' Motion for Summary Judgment as to FLSA liability [Record Document 167] is hereby **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this ___6th_____ day of March, 2020.


ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE